UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:                               )
                                     )      Chapter 13
    Scott Coffin,                  )
        Debtor                    )      Case No. 07-20955
                                     )
_____)

**Memorandum of Decision**

Is a Chapter 13 above-median income debtor entitled to reduce his projected disposable income (which impacts the level of his payments under his repayment plan) by $956 a month in "ownership expenses" for two vehicles, notwithstanding the fact that he incurs no such expenses and that related provisions of the Bankruptcy Code[1] entitle him to $412 a month as "operating expenses" for his vehicles?

At first blush, the question would seem to answer itself.  But, as it must be answered by resort to maladroitly-drafted legislation, the courts are not unanimous.  This case, submitted on a stipulated record, poses the question for the first time in this district.

As explained below, I conclude that, read fairly, the Code does not permit a Chapter 13 debtor to budget a vehicle ownership expense that he is not incurring.  Because the $956 is not being paid into the debtor's plan as it is presently proposed, its confirmation must be denied.

**Facts**

Scott Coffin is a debtor whose income is above the median for this district.  Per his amended Schedule I, his monthly gross income is $8,766.73 and his monthly "take-home" is

---

[1] Unless otherwise indicated, all references to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, et seq.

$6,557.03. Per his amended Schedule J, his monthly living expenses are $5,859.93. That leaves a positive monthly net of $697.10. Coffin's Amended Form 22C (Amended Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income) shows current monthly income (CMI) of $8,766.73, with expense adjustments of $8,6922.86, leaving disposable income of $73.87 a month.

Coffin owns three motor vehicles: a 2002 Chevrolet Camaro, a 1973 Cadillac Eldorado, and a 1987 Chevrolet Plow Truck. All are owned outright. Thus, Coffin can project no secured claim payments with respect to any. Nonetheless, his calculation of projected disposable income (Amended Form 22C) includes two deductions of $478 as vehicle ownership costs for "two or more" vehicles. The equation reduces Coffin's proposed monthly plan payments. This reduction in plan funding is in addition to the monthly $412 deduction he is entitled to take for the vehicles' "operating expenses."

Coffin's Second Amended Plan, proffered for confirmation, depends on his entitlement to the two $478 deductions. One of his unsecured creditors, eCast, objects, asserting that Coffin's resort to the $956 of "phantom expenses" impermissibly reduces his plan payment. The Chapter 13 trustee joins eCast's objection.

## Discussion

### 1. BAPCPA - The Context for Decision

The statute, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), is determinative: this dispute was born of new Code provisions added

by BAPCPA. And context is critical to their understanding.[2] So, at the outset, it is important to look at Congress' handwriting, writ large, on the wall: BAPCPA amended the Code for the express purpose of requiring more for creditors from debtors who can afford to pay:

> The intent of Congress can best be gleaned by examination of the legislative history surrounding the enactment of BAPCPA:
>
>> The heart of [BAPCPA's] consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ("needs-based bankruptcy relief"or "means testing") *which is intended to ensure that debtors repay creditors the maximum they can afford.*
>
> H.Rep. No. 109-33, pt. 1 at 2 (2005)(emphasis supplied). The words "maximum" and "afford" tell the story. Congress intended that debtors pay the greatest amount within their capabilities. Nothing more; nothing less.[3]

Congress' essential intention is, thus, beyond cavil.

Unhappily, the quality of legislative draftsmanship did not rise to the level of the reformers' zeal. As a consequence, BAPCPA has spawned scores of decisions in which courts strive to square awkward or imprecise language with Congress' overall aim.[4] With regard to the

---

[2]   As will appear clearly below, the statutory language courts must wrestle with to resolve the issue presented here is not altogether clear. Its interpretation and application has led to divergent results. In such circumstances, although one must begin with the words of the statute itself, Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004), resort to other evidence of legislative intent is appropriate to resolve ambiguities in statutory text or to avoid absurd results. Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 65-66 (2004)(Stevens, J., concurring).

[3]   Kibbe v. Sumski (In re Kibbe), 361 B.R. 302, 314 (B.A.P. 1st Cir. 2007). See also, e.g., Coop v. Frederickson (In re Frederickson), --- F.3d ----, 2008 WL 4693132 (8th Cir. 2008)("clear congressional intent of BAPCPA was to ensure that debtors repay creditors the maximum they can afford.")

[4]   See, e.g., Hon. Thomas F. Waldron and Neil M. Berman, Principled Principles of Statutory Interpretation: A Judicial Perspective after Two Years of BAPCPA, 81 Amer. Bankr.L.J. 195-96 (2007) ("Although it would be unreasonable to expect complete, or nearly complete, uniformity in the interpretation of BAPCPA, the stark differences in how the new law is being interpreted throughout the nation's bankruptcy courts have compromised, if not crippled, any pretense of predictability in the analysis a court might apply in interpreting its

3

precise issue before me, the story is the same - as a survey of authorities makes plain.[5]

Forewarned that pertinent Code provisions lend themselves to differing interpretations, a brief explication of the statute's workings is essential before we survey the caselaw.

**2. The Statutory Scheme.**

Section 1325(b) of the Bankruptcy Code provides in relevant part:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan-
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor…less amounts *reasonably necessary* to be expended-
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
> (ii) for charitable contributions…in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
> (3) *Amounts reasonably necessary* to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), *shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)*, if the debtor has current monthly income, when multiplied by 12, greater than-
> (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner…[6]

Simply stated, this means that Chapter 13's confirmation standard now includes benchmarks set by

---

many poorly drafted provisions").

[5]   See infra at footnotes 10 and 11.

[6]   11 U.S.C. § 1325(b)(1)-(3)(A)(emphasis supplied).

4

the so-called "means test," as set forth in § 707(b)(2).[7]  Because Coffin is an "above-median income" debtor, § 1325(b)(3) provides an express guide to the "determination" of his "reasonably necessary expenses," and points us to the following means test provision:

> The debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor…[8]

**3.  A Difference of Opinion(s).**

The parties agree that pertinent IRS standards designate an expense of $478 per vehicle, for up to two vehicles, as "transportation ownership/lease expense."[9]  Coffin asserts that the deduction is "applicable" to him because he owns two vehicles.  The trustee and eCast assert that since Coffin neither has, nor can project, any actual expense (i.e., no "car payment") with regard to his vehicles, the standard does not apply and he must add $976 per month back into his projected disposable income calculation.

To say there is a split of authority on this point would be an understatement.  Although the courts' rationales within either category vary in nuance, a substantial number of cases hold as Coffin would have it,[10] and a substantial number side with eCast and the trustee.[11]  In this

---

[7]  See Hon. Eugene R. Wedoff, Means Testing in the New sec. 707(b), 79 Amer. Bankr.L.J. 231 (2005) ("means testing has a simple purpose: to measure the ability of Chapter 7 debtors to repay debt and then, if they have sufficient debt-paying ability, to make them repay at least some of their debt...in order to receive a bankruptcy discharge").

[8]  11 U.S.C. § 707(b)(2)(A)(ii)(I)(emphasis supplied).

[9]  As found at www.usdoj.gov/ust/, which is where lines 28 and 29 of Official Form 22C direct debtors to go to compute their deductions.

[10]  See, e.g., Hildebrand v. Kimbro (In re Kimbro), 389 B.R. 518 (B.A.P. 6th Cir. 2008); In re Pearson, 390 B.R. 706 (B.A.P. 10th Cir. 2008); In re Armstrong, 395 B.R. 127

circumstance, "plain meaning" is a pipe dream. Some decisions (mostly of the former stripe) focus tightly on language and syntax. Others (mostly of the latter stripe) focus on the language

---

(E.D.Wash. 2008); Musselman v. eCast Settlement Corp. (In re Musselman), 394 B.R. 801 (E.D.N.C. 2008); In re Ragle, 395 B.R. 387 (E.D.Ky. 2008); In re Baughman, 2008 WL 4487879 (Bankr.N.D.Ohio 2008); In re Chamberlain, 369 B.R. 519 (Bankr.D.Ariz. 2008); In re Egbert, 384 B.R. 818 (Bankr.E.D.Ark. 2008); In re Lane, 394 B.R. 248 (Bankr.D.Mass. 2008); In re Mati, 390 B.R. 11 (Bankr.D.Mass. 2008); In re May, 390 B.R. 338 (Bankr.S.D.Ohio 2008); In re Osei, 389 B.R. 339 (Bankr.S.D.N.Y. 2008); In re Pearl, 394 B.R. 309 (Bankr.N.D.N.Y. 2008); In re Phillips, 382 B.R. 153 (Bankr.D.Mass. 2008); In re Sawicki, No. 2-07-bk-3493-CGC, 2008 WL 410229 (Bankr.D.Az. 2008); In re Weiderhold, 381 B.R. 626 (Bankr.M.D.Pa. 2008); In re White, 382 B.R. 751 (Bankr.C.D.Ill. 2008); In re Young, 392 B.R. 6 (Bankr.D.Mass. 2008); In re Barrett, 371 B.R. 855 (Bankr.S.D.Ill. 2007); In re Billie, 367 B.R. 586 (Bankr.N.D.Ohio 2007); In re Briscoe, 374 B.R. 1 (Bankr.D.D.C. 2007); In re Lynch, 368 B.R. 487 (Bankr.E.D.Va. 2007); In re Morgan, 374 B.R. 353 (Bankr.S.D.Fla. 2007); In re Rezentes, 368 B.R. 55 (Bankr.D.Haw. 2007); In re Swan, 368 B.R. 12 (Bankr.N.D.Cal. 2007); In re Vesper, 371 B.R. 426 (Bankr.D.Alaska 2007); In re Watson, 366 B.R. 523 (Bankr.D.Md. 2007); In re Zak, 361 B.R. 481 (Bankr.N.D.Ohio 2007); In re Zaporski, 366 B.R. 758 (Bankr.E.D.Mich. 2007); In re Demonica, 345 B.R. 895 (Bankr.N.D.Ill. 2006); In re Farrar-Johnson, 353 B.R. 224 (Bankr.N.D.Ill. 2006); In re Fowler, 349 B.R. 414 (Bankr.D.Del. 2006); In re Haley, 354 B.R. 340 (Bankr.D.N.H. 2006); In re Wilson, 356 B.R. 114 (Bankr.D.Del. 2006).

[11] See, e.g., Babin v. Wilson (In re Wilson), 383 B.R. 729 (B.A.P. 8th Cir. 2008); Ransom v. MBNA America Bank, N.A. (In re Ransom), 380 B.R. 799 (B.A.P. 9th Cir. 2007); Grossman v. Sawdy, 384 B.R. 199 (E.D.Wis. 2008); United States Trustee v. Deadmond (In re Deadmond), No. CV 07-15-H-CCL, 2008 WL 191165 (D.Mont. 2008); Wieland v. Thomas (In re Thomas), 382 B.R. 793 (D.Kan. 2008); Fokkena v. Hartwick, 373 B.R. 645 (D.Minn. 2007); Neary v. Ross-Tousey (In re Ross-Tousey), 368 B.R. 762 (E.D.Wis. 2007); In re Owsley, 384 B.R. 739 (Bankr.N.D.Tex. 2008); In re Reinstein, 393 B.R. 838 (Bankr.E.D.Wis. 2008); In re Watkins, No. 07-6317-PHX-SSC, 2008 WL 2475749 (Bankr.D.Az. 2008); In re White, 393 B.R. 436 (Bankr. N.D. Miss. 2008); In re Bennett, 371 B.R. 440 (Bankr.D.Cal. 2007); In re Ceasar, 364 B.R. 257 (Bankr.W.D.La. 2007); In re Devilliers, 358 B.R. 849 (Bankr.E.D.La. 2007); In re Howell, 366 B.R. 153 (Bankr.D.Kan. 2007); In re Pampas, 369 B.R. 290 (Bankr.M.D.La. 2007); In re Slusher, 359 B.R. 290 (Bankr.D.Nev. 2007); In re Talmadge, 371 B.R. 96 (Bankr.M.D.Pa. 2007); In re Barraza, 346 B.R. 724 (Bankr.N.D.Tex. 2006); In re Carlin, 348 B.R. 795 (Bankr.D.Or. 2006); In re Hardacre, 338 B.R. 718 (Bankr.N.D.Tex. 2006); In re Harris, 353 B.R. 304 (Bankr.E.D.Okla. 2006); In re Lara, 347 B.R. 198 (Bankr.N.D.Tex. 2006); In re McGuire, 342 B.R. 608 (Bankr.W.D.Mo. 2006) abrogated on other grounds by Coop v. Frederickson (In re Frederickson), 375 B.R. 829 (B.A.P. 8th Cir. 2007); In re Oliver, 350 B.R. 294 (Bankr.W.D.Tex. 2006); In re Skaggs, 349 B.R. 594 (Bankr.E.D.Mo. 2006).

equally closely, but also upon the essential thrust of BAPCPA - to generate greater dividends to Chapter 13 claim holders.

That debate on so important an issue so often devolves to a pinching exercise in semantics (when does "applicable" apply?) is unfortunate.[12] But it is understandable. For years, bankruptcy courts have been enjoined to adhere closely to the Code's text, and have been consistently warned that they are not to give the statute short-shrift, becoming "roving commissions to do equity."[13] Escape from "plain meaning" (which has come to mean something far stranger than merely following unambiguous statutory instruction) may be had only when it would lead to an "absurd" result.[14]

At the same time, the fact that the statute's language is *capable* of being read one way does not mean that it *must* be read that way. And this is doubly true when there exists another reasonable interpretation that squares fully with express legislative objectives. As one court recently observed:

> Clearly, there are "pros and cons" as to whether above-median income Chapter 13 debtors, in calculating projected disposable income, should be able to deduct the standard vehicle ownership allowance when the particular vehicle is owned free and clear of debt. Reliance on the word "applicable" in Section 707(b)(2)(A)(ii)(I), as a basis to form a decision concerning this issue, without some statement of Congressional interest, is an insufficient rationale. Likewise, the relevant statutes, when considered together, do not provide clear guidance as to their practical application. Their conjunctive meaning is far

---

[12] A more carefully crafted Code amendment would have short-stopped the argument.

[13] See In re Nosek, 544 F.3d 34, 43 (1st Cir. 2008)(citing Noonan v. Sec'y of Health & Human Servs. (In re Ludlow Hosp. Soc'y, Inc.), 124 F.3d 22, 27 (1st Cir. 1997)). It should be added, neither should the courts put words in Congress' mouth to effect some generalized notion of legislative intent where specific statutory language points in a different direction.

[14] It is worth reminding ourselves that "[a]bsurdity, like beauty, is in the eye of the beholder." Unzueta v. Ocean View School Dist., 6 Cal.App.4th 1689, 1698 (1992).

    from "plain." . . . After weighing the competing factors, this court believes that the language in Section 1325(b)(1)(B) simply does not contemplate an "artificial" deduction when there is no underlying debt. This is consistent with one of the primary objectives of BAPCPA, which is to ensure that debtors repay as much of their debt as reasonably possible.[15]

I agree. The determinative standard for Chapter 13 debtors' expenses is reasonableness and necessity.[16] A non-expenditure such as Coffin seeks to apply does not qualify.

    In reaching this conclusion, I considered whether a vehicle's declining worth (a non-cash cost of ownership) should be recognized as an ownership expense. Chapter 13 budgeting traditionally takes no account of such non-cash "costs." I am satisfied BAPCPA did not alter confirmation standards so fundamentally (and so adversely to creditors' interests) that they *must* now be taken into account. [17] Moreover, because Coffin is not incurring out-of-pocket ownership expenses, such

---

    [15]    In re White, 393 B.R. 436, 442-43 (Bankr.N.D.Miss. 2008). The White court went on to acknowledge that should circumstances after confirmation change, so that the debtors needed to replace (or repair) a vehicle, the court could fairly consider plan modification under § 1329(a).

    [16]    See In re Devilliers, 358 B.R. 849, 863 (Bankr.E.D.La. 2007)("the IRS guideline is the starting point to determine the necessary and reasonable level of future expenditure for these categories of expense"); In re McGillis, 370 B.R. 720, 729 (Bankr.W.D.Mich. 2007)("Section 1325(b)(3) should not be interpreted as categorically substituting the Section 707(b)(2) expense restrictions for the 'reasonably necessary' expense requirement already imposed by Section 1325(b)(2). Rather, it should be interpreted as offering a further guideline for ensuring that the expenses claimed by an above-median-income debtor are reasonably necessary").

    [17]    In re Devilliers, 358 B.R. at 864. See also Babin v. Wilson (In re Wilson), 383 B.R. 729, 734 (B.A.P. 8th Cir. 2008)("it is only the *payments* that affect the debtor's ability to repay his creditors" (emphasis in original)); Ransom v. MBNA America Bank, N.A. (In re Ransom), 380 B.R. 799, 807 (B.A.P. 9th Cir. 2007)("the payments that debtors make are what actually affect their ability to make payments to their creditors"). And cf. In re McGillis, 370 B.R. at 731 (refusing to allow "phantom deductions" under § 1325(b) for a timeshare and second mortgage).

    Coffin maintains only that he is entitled to the $956 deduction as a matter of law, based on his preferred interpretation of the statute. I will not today rule out the possibility that a debtor might someday proffer evidence justifying an expense related to vehicle ownership or replacement specific to his or her circumstances. See, e.g., supra foonote15.

expenses cannot fairly be "projected" in a plan.[18] Finally, this approach comports more closely with our BAP's reality-based approach to Chapter 13 plan budgeting recently outlined in In re Kibbe.[19]

**Conclusion**

The debtor's plan does not provide that his projected disposable income will be devoted to his plan. Therefore, confirmation is DENIED. A separate order consistent with this opinion will enter forthwith.

  November 18, 2008  
_____  
Date

/s/ James B. Haines, Jr.  
_____  
James B. Haines, Jr.  
U.S. Bankruptcy Judge

---

[18] See In re Gonzalez, 388 B.R. 292, 303 (Bankr.S.D.Tex. 2008)("The court must consider future circumstances; i.e., 'project.' The debtor must actually intend to incur expenses on the allowed expenditure during the debtor's plan period."); In re Renicker, 342 B.R. 304, 309 (Bankr.W.D.Mo. 2006)("the plain language of sec. 1325(b)(2) unambiguously indicates that prospective-not historical-expenses are to be used to calculate disposable income").

[19] 361 B.R. at 314-15. In Kibbe, a below-median income debtor's plan was denied confirmation where it failed to satisfy Chapter 13's "projected disposable income requirement." "If circumstances dictate that neither Form B22C nor Schedules I and J accurately portray the debtor's income...projected over the plan commitment period, the bankruptcy court must make a fact-based determination at the time of confirmation....[T]he object is not to select the right form, *but to reach a reality-based determination of a debtor's capability to repay creditors*"(emphasis added). Id. Cf. In re Frederickson, --- F.3d ----, 2008 WL 4693132, *6 (8th Cir. 2008), where an above-median income debtor's plan was denied confirmation when it failed to extend for the length of the "applicable commitment period," despite the debtor having a negative "disposable income" on Form 22C. "[W]e adopt the view...that a debtor's 'disposable income' calculation on Form 22C is a starting point for determining the debtor's 'projected disposable income,' but that the final calculation can take into consideration changes that have occurred in the debtor's financial circumstances....*This approach realistically determines how much a debtor can afford to pay his creditors and maximizes the amount the debtor must pay to his unsecured creditors*." Id. (emphasis added).